*445 The opinion of the Court was delivered by
Evans, J.
The law which is applicable to every species oí bailment, must depend upon the nature of the undertaking of the bailee. The general rule is, that he shall answer for negligence in the discharge of his trust. In the case of a common carrier, the law imputes negligence, unless the injury has been sustained by the act of God or the public enemy. In all other cases, some degree of negligence must be proved. The owner of a bridge is not a common carrier, for in general he has no possession or control over the goods. He is not like a stage owner or a Nail Road Company. In these cases, the passenger is passive, the government of the stage or the car is under the driver or the engineer. But in crossing a bridge, the acts and conduct of a passenger are regulated by his own will. A bridge over a stream is but a continuation of the public highway, which the owner, in consideration of certain tolls, undertakes to build and keep in repair. He is more like the owner of a turnpike road, and his liabilities are analagous. His obligation is to keep the bridge in proper condition for the safe passage of passengers. This is his duty, and if he omit it, he must answer for whatever loss others may sustain. If the defendant’s bridge had become ruinous, and had sunk down from decay, whilst the plaintiff’s negro was passing over, or if a plank had been deficient and the negro had fallen through and was hurt or drowned, then, I presume, the defendant would be liable, because the proximate cause of the loss would be his negligence in omitting the performance of the duty which the law imposes on him. But if the bridge had been substantially built, and every precaution had been used in its construction to render it safe and secure, and, notwithstanding, it had been borne off by the force of the current, in a great freshet, whilst the negro was crossing, or if he had leapt into the river to shew his dexterity in swimming, then, it seems to me, no negligence could be imputed to the owner. Or if the defendant had locked his toll-gate and the negro had come there at a late hour of the night, and instead of waiting until the gate was opened, had attempted to swim to the shore, and in doing so was *446 drowned, I do not see that the defendant could, on any legal or moral principle, be made liable. The act from which the loss was sustained was voluntary, and the bridge owner, in none of the cases supposed, could exercise any control to prevent it.
I suppose there is no doubt the negro was drowned in attempting to swim from the abutment to the shore. The act was voluntary, and there is no ground to charge the defendant, except that he had taken off the planks from the land part of the bridge, in order to save it from destruction in the unprecedented freshet of March, 1850. This, I think, he had a right to do. It was no violation of his duty to the public to save his bridge by this precaution. If he had done so without giving any notice, and the negro had fallen into the river of a dark night, when he could not see what had been done, there would be ground to charge the defendant with negligence. But he had piled up the timbers on the bridge, so as to be seen by all who came. It was a bright night, and the negro had been expressly warned that he could not pass, but he declared his intention to go, saying he had swam the river before and could do it again. In his death, I can see no connection with any negligence of the defendant, and am therefore of opinion the action cannot be maintained. If the facts were at all doubtful, the case should have been submitted to the jury to decide on them; but where the facts are undisputed, it is the province of the Court to apply the law as in cases of special verdicts. The motion to set aside the nonsuit is therefore dismissed.
O’Neall, Wardlaw, Fe,ost, Withers and Whitner, JJ. concurred.

Motion dismissed.